STATE of Missouri, Respondent,

v.

Jessie E. KIRKLAND, Appellant.

No. WD 35118.

Missouri Court of Appeals,
Western District.

Nov. 7, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 26, 1984.

Application to Transfer Denied
Feb. 26, 1985.

William M. Barvick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant, an inmate in the Missouri Intermediate Reformatory ("Algoa"), was charged as a "prior offender" in a two-count information, to-wit, Count I, attempt to do injury to a building (§ 217.385, RSMo Supp.1983, a class C felony), and Count II, escape from confinement (§ 575.210.-1, .2(2)(a), RSMo 1978, a class D felony). A jury found defendant guilty as charged under both counts and the trial court fixed his punishment at three years confinement (Count I) and three years confinement (Count II), said sentences to run concurrently, but consecutively with the sentence he was presently serving. Following an unavailing motion for new trial, defendant appealed.

Defendant does not question the sufficiency of the evidence to support the dual convictions. The points of error, three in number, relied upon by defendant are: (1) the trial court erred in failing to instruct the jury on the "defense of necessity" with respect to Count II, escape from confinement: (2) defendant's conviction for attempt to do injury to a building (§ 217.385, supra) cannot stand because (a) the offense is a lesser included offense of escape from confinement (§ 575.210.1, .2(2)(a), supra) for which defendant was charged and convicted and (b) the acts constituting attempt to do injury to a building were part of a continuing course of conduct in perpetrating the offense of escape from confinement; and (3) defendant's conviction for attempt to do injury to a building (§ 217.-385, supra) cannot stand because the evidence unequivocally proved a completed act as opposed to a mere attempt to do injury to a building.

■ None of the points raised by defendant were preserved for appellate review. Regarding point (1), no objection was lodged by defendant on the record at trial or in his motion for new trial that the trial court erred in not instructing the jury on the "defense of necessity" regarding the submitted offense of escape from confinement. Hence, point (1) was not preserved for appellate review. Rule 28.03; Rule 29.11(d); and *State v. Martin*, 620 S.W.2d 54, 55 (Mo.App.1981). Regarding points (2) and (3), the multiple allegations of error posited therein were never mentioned or included in defendant's motion for new trial and, accordingly, were not preserved for appellate review. Rule 29.11(d); and *State v. Flynn*, 541 S.W.2d 344, 348 (Mo.App.1976). Defendant seeks appellate review of the triad of purported errors under the aegis of "plain error". Rule 29.12(b). Error of such magnitude resulting in "manifest injustice" or "miscarriage of justice" is a prerequisite for invoking the "plain error" rule. Defendant assumes, sub silentio, that the purported grounds of error asserted in points (1), (2) and (3) rise to such magnitude. Giving defendant the benefit of the doubt, and to preclude the specter of any presently claimed errors subsequently arising in an ancillary proceeding, this court will address all three points of error asserted by defendant on appeal.

■ A brief review of the evidence is required to put the three points in proper perspective for appellate disposition. Defendant was incarcerated in the Missouri Department of Corrections on January 21, 1982, for a term of four years. On or about December 2, 1982, defendant was confined in "Dorm 6" a "lock-down dorm" at Algoa, and shared a cell with inmate Roger Hawkins. Defendant had been placed in "Dorm 6" following his intervention in an altercation involving two other inmates which precipitated a threat or attempt to "knife or stab" defendant in retaliation. His placement in "Dorm 6" was a "protective measure". Defendant's cell mate had a saw blade. According to the testimony of defendant's cell mate, who was called as a witness by defendant, the two "agreed" on December 9, 1982, to cut the restraining bars on the window of their cell and escape. Defendant's cell mate did the sawing and defendant kept a "lookout". According to defendant's testimony he did not entertain any plan or thought of escaping until December 11, 1982, when he was told that he would be put back into "general population" on December 14, 1982. Further, according to defendant's testimony, he was afraid that some of the friends of one of the inmates involved in the altercation he had intervened in would try to "stick him" if he was returned to "general population" and for that reason he decided to escape with his cell mate when the latter completed sawing the restraining bars. The sawing of the restraining bars was completed about 1:00 a.m. on December 13, 1982, and defendant and his cell mate effected their escape. Defendant and his cell mate were "at large" approximately fifteen hours, as they were not apprehended until about 4:15 p.m. on December 13, 1982, at a "church" approximately 3½ miles from Algoa. During the fifteen-hour interval just mentioned, defendant made no effort to report or surrender himself to the proper authorities. Moreover, defendant made no effort to report his fear or apprehension of being returned to "general population" after being advised thereof on December 11, 1982.

The defense of "justification", the crux of defendant's first point, which is functionally synonymous with the defense of "necessity", is statutorily embodied in § 563.026, RSMo 1978, as part of the Criminal Code. *State v. Baker*, 598 S.W.2d 540 (Mo.App.1980); and *State v. Daniels*, 641 S.W.2d 488 (Mo.App.1982). MAI–CR2d 2.40, with appropriate adaptations, is the pattern instruction promulgated by the Supreme Court for submission of the defense of "justification" or "necessity". Paragraph 4 of the "Notes on Use" appended to MAI–CR2d 2.40, provides, inter alia, as follows: "This instruction cannot be given unless the court determines that the claimed facts and circumstances, if true,

are legally sufficient for justification. Section 563.026.2. Subject to that rule, if there is evidence to support this defense, MAI–CR 2.40 must be given whether requested or not. It is an affirmative defense."

A conflict between *State v. Baker*, supra, a decision by the Missouri Court of Appeals, Western District, and *State v. Daniels*, supra, a decision by the Missouri Court of Appeals, Southern District, immediately emerges regarding submissibility of the defense of "justification" or "necessity".

In *Baker*, this court, after an exhaustive analysis of relevant cases from other jurisdictions, found the following factors "to be important in the evidentiary matrix surrounding the defense: 1) a present and imminent danger, the definition of danger being based upon the facts of a defendant's confinement and the imminence of the danger not being solely based on a time interval but upon the entire fact situation; 2) exhaustion of remedies or evidence that attempts to do so had been futile and that the imminence of danger of threatened harm is such that no alternative is available; 3) evidence that the escapee did not use force or violence against innocent persons in perfecting the escape; 4) and a duty on the part of the escapee to surrender when the threatened danger has been avoided." *State v. Baker*, supra, 598 S.W.2d at 545. As perceived by this writer, the court went on, however, in *Baker* and expounded the view that factors 2) and 4), supra, although bearing on the issue of the credibility of an escapee's claim of "justification" or "necessity", are not essential elements of the defense. *State v. Baker*, supra, 598 S.W.2d at 545–46. This conclusion is sustained by the following excerpt from *State v. Baker*, supra, 598 S.W.2d at 546: "To summarize, the essential element which permits the submission of the defense of necessity is the imminence of danger to the person of the escapee. Voluntary return or attempts to do so and, in some instances of continued harassment, recourse to administrative and legal remedies will bear on issues of credibility.

These issues bearing on the credibility of the prisoner's claim can be developed in the evidence and cross-examination.... The defense should be submitted when the offered evidence, if believed by the jury, would support a finding by them that the offense of escape was justified by a reasonable fear of death or bodily harm so imminent or emergent that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed to avoid injury to the prisoner."

In *Daniels*, the Missouri Court of Appeals, Southern District, quoted with approval the four factors found in *State v. Baker*, supra, " 'to be important in the evidentiary matrix surrounding the defense' " of "necessity" or "justification". *State v. Daniels*, supra, 641 S.W.2d 489. If correctly perceived by this writer, the court in *Daniels*, however, held that all four factors, supra, are essential elements of the defense of "necessity" or "justification", and a failure of proof as to element 4) exonerated the trial court of any error in failing to instruct on defendant's "affirmative defense" that his escape was occasioned by "duress and necessity". This conclusion is sustained by the following excerpt from *State v. Daniels*, supra, 641 S.W.2d at 490: "[T]he glaring deficiency in the defense advanced herein is the total failure of any proof by defendant, or otherwise, that he did or attempted to report or surrender to a single police agency when he attained a position of safety from the averred threats of the Jasper County jail personnel." This court sees no escape from the conclusion that an irreconcilable conflict exists between *State v. Baker*, supra, and *State v. Daniels*, supra.

Notwithstanding the conflict heretofore noted between *State v. Baker*, supra, and *State v. Daniels*, supra, defendant's first point in the instant case, on its facts, lends itself to being disposed of within the divergent holdings of both cases. The total failure of any proof by defendant, or otherwise, that he reported or surrendered him-

self to the proper authorities (factor 4, supra) after escaping insulated the trial court, under *State v. Daniels*, supra, from any charge or claim of error for not instructing the jury on the defense of "justification". Turning to *State v. Baker*, supra, the defense of "justification", in order to be submissible, must be supported by evidence that an escapee's fear of death or bodily harm is "imminent or emergent". *State v. Baker*, supra, 598 S.W.2d at 546. The record in the instant case discloses that administrative personnel at Algoa, apparently in response to attempts or threats of harm directed toward defendant following his intervention in the altercation previously mentioned, immediately placed defendant, for his own benefit, in "Dorm 6" as a "protective measure". Defendant's testimony that he received word on December 11, 1982, that he was going to be returned to "general population" on December 14, 1982, implies that any danger associated with threats previously directed towards him arising from the altercation which he intervened in had subsided. Moreover, there is no evidence of any threats leveled towards defendant after December 2, 1982. In sum, there is not a scintilla of evidence that defendant's fear or apprehension of being returned to "general population" sprang from any threat or threats which could be characterized as "imminent or emergent". Defendant's testimony, at best, reflected a subjective state of mind, absent corroborating evidence of any present or current threat of harm at the time he decided to escape. If nothing more than testimony by an escapee of a subjective fear or apprehension of harm or injury is all that is required to support submission of the defense of "justification", then the defense becomes a mockery and its authenticity in genuine factual contexts which cry out for relief is seriously jeopardized. Subjective fear or apprehension of harm or injury, standing alone, even under *State v. Baker*, supra, does not brand a trial court with error for failing to submit the defense of "justification" in an escape case.

 Due to the bifurcated nature of defendant's second point, the dual contentions contained therein will be separately addressed for purposes of clarity. First, defendant contends that his conviction for attempt to do injury to a building (§ 217.-385, supra) cannot stand because said offense is a lesser included offense of escape from confinement (§ 575.210.1, .2(2)(a), supra) for which he was also charged and convicted. It is manifest that attempt to do injury to a building, designated by defendant as the lesser included offense, is not a necessary element of escape from confinement, designated by defendant as the greater offense.[1] A fertile imagination is not required to envision numerous ways by which escapes from confinement can be effected without attempting to do injury to a building. Perforce, all elements of the lesser offense, i.e. attempt to do injury to a building, are not required to establish the greater offense, i.e., escape from confinement. Gauged by the "statutory element test", attempt to do injury to a building, contrary to defendant's contention, is not a lesser included offense of escape from confinement. See *State v. Neighbors*, 613 S.W.2d 143, 147 (Mo.App.1980). As stated in *State v. Seddens*, 624 S.W.2d 470, 473 (Mo.App.1981), "[a] lesser offense is not included in a greater unless it is impossible to commit the greater offense without first committing the lesser."

 Second, defendant contends that his conviction for attempting to do injury to a building cannot stand because the acts committed with respect thereto were part of a continuing course of conduct in perpetrating the offense of escape from confinement. Neither offense was included in the other, supra, even though they occurred in a continuing course of conduct, and each

---

**1.** It is unnecessary to dwell on whether the contention at hand rests on a false premise— that escape from confinement, a class D felony, is a greater offense, and attempt to do injury to a building, a class C felony, is a lesser offense.

Prevailing case authority subsequently cited in the body of this opinion dispels any merit to defendant's contention of a lesser included offense.

was a separate offense for which defendant was subject to being charged and convicted. See *State v. Olson*, 636 S.W.2d 318, 320 (Mo. banc 1982). Defendant relies principally upon §§ 556.046 and 556.041, RSMo 1978. He contends that under § 556.046, supra, attempt to do injury to a building is an offense included within escape from confinement, and under the prescription of § 556.041, supra, he cannot be convicted of both charges. Defendant's reliance thereon is misplaced as evidenced by *State v. Lewis*, 633 S.W.2d 110, 114 (Mo. App.1982): "The code definition of included offense enacts, in paraphrase, the Blockburger [*Blockburger v. United States*, 284 U.S. 299, l.c. 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)] test that where the same conduct constitutes a violation of two distinct statutory provisions, 'the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,'—if so, there is no identity of offense. *State v. McCrary*, 621 S.W.2d 266 (Mo. banc 1981); *State v. Chambers*, 524 S.W.2d 826, 829[1, 2] (Mo. banc 1975)." Both contentions embodied in defendant's second point are overruled.

■ Defendant's third and final point, that his conviction for attempt to do injury to a building cannot stand because the evidence unequivocally proved a completed act as opposed to a mere attempt to do injury to a building, is without merit. The advent of the Criminal Code, more particularly § 564.011, RSMo 1978, captioned "Attempt", has eliminated "failure" as an element of attempt offenses. The committee "Comment" to the "1973 Proposed Code" appended to § 564.011, supra, in V.A.M.S., (1979), addresses the matter as follows: "Subsection 1 does away with failure as an element of attempt offenses. Present law permits a defendant charged with attempt to argue that he is innocent because he actually went through with the crime. By eliminating failure as an element of attempt, the section avoids the problem of losing a conviction on a charge of attempt

when the evidence shows that the offense was completed."

Judgment affirmed.

SHANGLER, J., concurs in majority opinion.

DIXON, P.J., concurs in result in separate concurring opinion.

DIXON, Judge, concurring.

I concur in the result on the issue of submissibility of the defense of necessity. My reasons for concurrence are somewhat different than those expressed in the majority opinion.

My examination of the record reveals the following facts. The defendant asserts he became involved in an altercation between two other prisoners when he attempted to prevent a black prisoner from stabbing a white prisoner. He further asserts the black prisoner tried to stab him. The black prisoner was relegated to the "hole" (administrative segregation), and the defendant says that same night, friends of the black prisoner again "tried to stick him." The defendant was then sent to the "Special Adjustment Unit," which was later identified as "Special Adjustment Unit, 9 Dorm." The escape was from "6 Dorm," a "lock down" dormitory. There is no evidence as to the duration of the defendant's stay in the "Special Adjustment Unit Dorm 9." The defendant had been in "6 Dorm" for about 10 days. Thus, there is no evidence of any kind, nor any inference to be drawn from the facts, concerning the length of time between the altercations and the escape.

The defendant would be entitled to the submission of the defense if there was evidence from which a reasonable person could conclude that his escape was motivated by a reasonable fear of imminent death or bodily injury.

The time interval between the altercations and the escape is crucial to a determination of that issue. If the event were fresh and within a reasonable time, the defense would be submissible. The vital linkage of the time of the earlier attacks

with the escape itself is lacking in this case. The testimony of the fear or apprehension of the escapee will, in all cases, be subjective. The key is the reasonableness of those subjective feelings, and that depends on the recital of the events that purport to give rise to that state of mind. Therefore, I agree that the defense was not submissible on these facts.